IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-00869-WDM

SUZAN L. MADRON,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Miller, J.

Plaintiff Suzan Madron (Madron) appeals a final administrative decision by defendant Jo Anne B. Barnhart (the Commissioner) finding that she was not disabled and denying her application for disability insurance benefits. I have jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Madron's counsel failed to appear for scheduled argument, and I ordered the parties to show cause why I should not decide this matter without oral argument. Neither party did so. After considering the parties' written arguments and following review of the administrative record, I conclude the decision must be affirmed.

### Background

Madron was born August 9, 1955. Administrative Record, at 16. She has an eighth-grade education and has worked as a cashier, among other jobs. *Id.* at 16, 85. She ceased working on December 15, 2002. *Id.* at 15.

Madron asserts she is disabled as a result of asthma, back pain, and pain in her left ankle. The medical evidence of record generally reflects treatments for these conditions. *Id.* at 146-203, 210-224

In March 2003, Madron filed an application for disability insurance benefits. *Id.* at 61-63.

In May 2003, Madron saw a physician for a physical residual functional capacity assessment. *Id.* at 137-144. The physician found Madron was capable of lifting twenty pounds occasionally and ten pounds frequently; she could stand or walk at least two hours in an eight-hour workday (with notation that she could stand or walk four to eight hours and did not need a cane except for prolonged standing or walking on uneven surfaces) and could sit about six hours in an eight-hour workday with postural shifts and normal breaks. *Id.* at 138. Madron could push and pull without limitation; she could stoop and balance frequently but could only occasionally climb ramps or stirs, kneel, crouch, or crawl. *Id.* at 138-139. She was to avoid concentrated exposure to extreme cold or vibration. *Id.* at 141. The physician noted that there were some inconsistencies in Madron's claims and that she was only partially credible. *Id.* at 142.

Based upon these assessments, the Commissioner concluded that Madron was not disabled. *Id.* at 49. Madron requested and was granted a hearing before an Administrative Law Judge (ALJ).

At the hearing, Madron was represented by an attorney. *Id.* at 22. She testified regarding her daily activities and use of pain medication. *Id.* at 26-37.

The ALJ questioned a vocational expert (VE) regarding whether a claimant who

was limited to light, unskilled work and to standing and walking two hours out of an eight-hour work day could perform any of Madron's past relevant work. The VE responded that the claimant could perform work as a Cashier II. *Id.* at 44-45. The VE acknowledged that the person would have to have basic reading skills. *Id.* at 45. The ALJ then asked the VE to assume a claimant with Madron's age, education, and work experience, with the same physical limitations, would need work where no reading was required. The VE identified unskilled, light work as a inspector hand packager or small products assembler. *Id.* at 45-46.

When Madron's attorney added the restriction that the claimant would have to get up and move around to relieve pain every fifteen or twenty minutes, the VE stated the claimant would not be able to perform the occupations of inspector hand packager or small products assembler. *Id.* at 47.

The ALJ issued a decision on October 4, 2004. *Id.* at 14-21. The ALJ made the following findings:

1. Madron had not engaged in substantial gainful activity since December 15, 2002. *Id.* at 15.

2. Madron had "chronic pulmonary insufficiency and lumbar radiculopathy due to a right sided nerve injury," as well as "a history of non displaced fracture of the lateral malleolus (left ankle)." These impairments more than minimally limited her ability to perform work-related activities and thus were "severe" within the meaning of the social security regulations. *Id.*

3. Madron's severe impairments did not meet a listing. *Id.* at 15-16.

4. Madron retained the residual functional capacity to perform light work with restrictions to standing and walking no more than two hours in an eight-hour day. *Id.* at 19.

     5.     Madron would be capable of performing her past relevant unskilled light work as a cashier. *Id.*

     6.     Alternatively, Madron could also perform other unskilled light jobs existing in significant number such as inspector/hand packager. *Id.*

Based upon these findings, the ALJ concluded that Madron was not under a disability as defined by the Social Security Act. *Id.* at 20.

The Appeals Council denied a request for review, rendering the ALJ's determination final for purposes of this appeal. *Id.* at 4.

## Standard of Review

I review the Commissioner's decision to determine whether her factual findings are supported by substantial evidence in the record as a whole and whether she applied the correct legal standards. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is '"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'" *Id.* (citations omitted). The failure to apply correct legal standards or to provide an adequate basis from which I may determine that the appropriate legal principles were followed is grounds for reversal. *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993) (citation omitted).

## Discussion

Madron appears to assert that the ALJ improperly rejected the medical evidence, erroneously found that she lacked credibility, and ignored the VE's testimony that she was unable to work.

Madron does not explain what medical evidence was inconsistent with the ALJ's decision. She merely states that "[t]he medical records of the medical service providers, as noted above, clearly indicate the Plaintiff was, and is, totally disabled." *See* Opening Brief, at 5.[1] Moreover, she seems to argue that the mere finding of a severe impairment compels a finding of disability, ignoring the third, fourth, and fifth steps of the standard analysis. *Id.*

The ALJ addressed the findings of examinations by Dr. Lawrence Lesnak, the physician who treated Madron's back injuries and pain in 2002 and 2003. Record, at 17. He acknowledged the findings of pain, limping, and limitations on her range of motion. *Id.* He also discussed the records concerning her ankle injury and her asthma. *Id.* After considering this evidence (and based on her failure to comply at times with medications and recommended treatment and on inconsistencies in her claims), the ALJ found Madron retained the capacity to perform light work at an unskilled level; based on the medical records, he added the further limitation that she could stand and walk only two hours in an eight-hour work day. *Id* at 18-19.

Madron points to no record evidence showing that any physician found her incapable of performing the tasks required for light work or that any of the findings of her treating physicians were inconsistent in any way with the ALJ's determination of her residual functional capacity. In the absence of such evidence, I cannot find that the ALJ improperly rejected medical evidence or substituted his own judgment for that of

---

[1] The references to page numbers are to those numbers provided at the bottom of the pages of the brief rather than those printed at the top of the page as a result of electronic filing.

her doctors.  *Cf. Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988) (where claimant fails to provide sufficient evidence supporting claims, administrative decision is supported by substantial evidence); *Vakas v. Barnhart*, 120 Fed. Appx. 766, 769 (10th Cir. 2005) (court rejected argument that ALJ erred by declining to give controlling weight to treating physician opinion where claimant cited no restrictions in physician findings to indicate impairments would have limited ability to perform sedentary or light work).

     Madron next asserts that the ALJ ignored the testimony of the VE, specifically the VE's statement that she was unable to hold any job.  She fails to acknowledge that this statement by the VE was made in response to her attorney, upon the further limitation of frequent breaks for moving around, a limitation that was not found by the ALJ.  The VE's opinions, based on the ALJ's hypothetical questions drawn from impairments of record, were that Madron could perform her past relevant work as a cashier or, if her reading ability was limited, as an inspector/hand packager or small products assembler.  *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (hypothetical question to VE need only include impairments that are supported by the evidentiary record).

     Finally, Madron takes issue with the ALJ's credibility findings.  She asserts that she did not have an MRI or ankle surgery done because she could not afford the cost and that the ALJ was in error to point out that she continued to buy cigarettes.  She cites *Hayden v. Barnhart*, 374 F.3d 986 (10th Cir. 2004).  In that case, the Tenth Circuit concluded that the ALJ's credibility finding was not supported by substantial evidence

where the ALJ did not give specific reasons for the weight given the claimant's statements, failed to consider relevant factors, and made findings contrary to the objective evidence of record.  *Id.* at 993-994.  The case, however, does not address inability to afford treatment or the choice of cigarettes or other expense over medical care.

In her reply brief, Madron raises for the first time the assertion that the ALJ should have called her husband to testify regarding discrepancies in her statements.[2] She does not cite any authority for this argument, and, because the issue was first raised in her reply brief, it is waived.  *Ward v. Utah*, 398 F.3d 1239, 1246 (10th Cir. 2005).  Nevertheless, I conclude the ALJ's credibility finding does not provide any ground for remand of this case.

The Social Security rulings direct an ALJ to give reasons for a credibility finding that are supported by the record and are sufficiently specific to inform reviewers of the weight given to a claimant's statements and the reason for that weight.  *See* Social Security Ruling 96-7p.  In this case, the ALJ met these requirements.  He listed in detail a variety of reasons for finding Madron less than fully credible.

An ALJ's credibility determinations are generally treated as binding upon review.  *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983).  Here, Madron has given no reason to depart from this rule.  Even assuming the ALJ should not have considered

---

[2] In applications for public assistance made in February and November 2002, Madron apparently listed her spouse as a household member and disabled.  An investigation revealed that her husband was not disabled but was self-employed.  Record, at 18.

7

the statements regarding Madron's husband's disability and her choice of cigarettes over medical treatment, there were other reasons for finding her less than credible, including that she had failed to make complaints to her treating physicians about some of her symptoms or side effects of medications.[3] (On the issue of side effects, Madron argues for the first time in her reply brief that the ALJ failed to cite any medical literature or testimony that indicated "the side effects were not from the said medications." Reply brief, at 4. This begs the point: the ALJ noted she did not complain of the side effects to her physicians, not that she could not have experienced the effects she claimed.)

Finally, in her reply brief, Madron argues the ALJ incorrectly cited Exhibits 3F (pages 3, 9, and 12) and 5F as evidence that she did not comply with her medical treatment. She asserts the exhibits actually show that she could not afford the treatment. Although several of the referenced pages do reflect that Madron was either waiting for insurance or changing insurance companies, none of them expressly state she could not afford the recommended treatment. Again, as noted above, there were reasons other than her noncompliance to support the ALJ's credibility finding.

## Conclusion

For the reasons discussed above, I conclude the ALJ's finding that Madron was

---

[3] On this issue, I note a discrepancy that the ALJ does not discuss. Madron claimed in the hearing that she was unable to read and could only write her name. Record, at 37. In his opening brief, her attorney described her as "illiterate." Opening brief at 2. In her Disability Report, however, Madron marked "Yes" in two boxes, indicating that she could both read English and write more than her name in English. *Id.* at 83. Further, Madron indicated she did not need help in completing the four-page Daily Activities Questionnaire. *Id.* at 107.

not disabled within the meaning of the Social Security Act was supported by substantial evidence and was free from legal error.

DATED at Denver, Colorado, on March 2, 2006.

BY THE COURT:

s/ Walker D. Miller
United States District Judge