IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 05-cv-00869-WDM

SUZAN L. MADRON,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## ORDER ON MOTION FOR ATTORNEYS' FEES

Miller, J.

This matter is before me on Plaintiff's Motion for Legal Fees Under 28 U.S.C.A. 2412 (Docket No. 41). Defendant Commissioner of Social Security opposes the motion. After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion will be denied.

### Background

Plaintiff filed for supplemental security income and disability insurance benefits with the Social Security Administration in March 2003, claiming as disabling conditions her asthma, back pain, and pain in her left ankle. Her application was initially denied and she then sought a hearing before an administrative law judge ("ALJ"). I take the following background from the decision of the Tenth Circuit in *Madron v. Astrue,* 311 Fed.Appx. 170, 2009 WL 323248, Case No. 06-1200 (Feb. 11, 2009):

> Ms. Madron was born in 1955. Although she completed the eighth grade, she has great difficulty reading. Most of her

previous jobs have required only unskilled labor. In 1996, she worked at an airport, loading and unloading containers of food onto airplanes. While on that job in 1996, she injured her back and hips and, as a result, was out of work until 1998. After her recovery, she was employed at a number of different convenience stores, working as a cashier and stocker. Her last job was as a seasonal employee at Walmart, where she worked as a cashier from September to December 2002. She has not worked since that time.

In 2002 and 2003, Ms. Madron was seen by Dr. Lawrence A. Lesnak, who initially diagnosed her with a number of pain-causing conditions: chronic right-sided sacroiliitis, chronic lumbosacral myofascial pain, and L5 and S1 radiculopathies. In February 2003, Dr. Lesnak reported Ms. Madron's subjective complaints of worsening pain and noted the possibility that her radiculopathy was worsening. In August 2003, he performed a number of tests, which confirmed that Ms. Madron had moderately severe radiculopathy. As a result of these tests, Dr. Lesnak gave Ms. Madron a prescription for medication to help control her symptoms. Dr. Lesnak repeatedly encouraged Ms. Madron to have a magnetic resonance imaging ("MRI") performed to aid with further diagnosis and treatment. Although the procedure was scheduled at one point, the MRI was never performed because Ms. Madron could not afford it. Eventually, Ms. Madron stopped seeing Dr. Lesnak altogether, because she lacked insurance. Instead, she went to Clinica Campesina where she continued to be treated for lower back pain, radiculopathy, and decreased strength.

In March 2004, Ms. Madron fell and fractured her ankle. She was referred to an orthopedic specialist, Dr. Michael Wertz, who recommended surgery. She did not have the operation; she would have had to pay half of the costs prior to the surgery, which she could not afford. As of June 2004, she was awaiting an opening for low-cost surgery at the University Hospital. At the hearing before the ALJ, she was wearing a half-cast to support her ankle.

Ms. Madron also has a history of moderate to severe asthma. However, she has been able to control her symptoms. She takes daily medication and participates in an asthma management class. She has reduced her smoking from three packs per day to less than one. In 2002, she quit smoking

entirely for two weeks and her pulmonary function returned to normal. Her doctors found that, with treatment, Ms. Madron can manage her asthma and is "[a]ble to be as active as [she] desires." Admin. R. at 199.

On May 12, 2003, Dr. George Twombly, a state agency physician, reviewed Ms. Madron's medical records and completed a residual functional capacity ("RFC") assessment. Dr. Twombly concluded that Ms. Madron could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk four hours in an eight hour workday (with a cane needed only for prolonged standing or walking on uneven surfaces), and sit about six hours in an eight hour workday. Among the few other limitations noted were the need to avoid prolonged exposure to extreme cold, avoid jolting motions to the lower back, and avoid walking on uneven surfaces or unprotected heights. Dr. Twombly noted that there were "[s]ome inconsistencies" in her statements and that Ms. Madron had "only partial credibility." *Id.* at 142.

\* \* \*

At the hearing before the ALJ in June 2004, Ms. Madron described "stabbing" pain in her right side, particularly in her back and leg. *Id.* at 26. She stated that she was able to do some light housework, including dusting, making her bed, and "maybe do[ing] some dishes," but she could not vacuum and, because she is unable to bend down, she could not mop. *Id.* at 30. She depended on the aid of a friend, who was also a certified nurses' assistant, to help her to do her grocery shopping and housework. She reported that she could sit for five to fifteen minutes, stand for five to ten minutes, lift ten pounds with her left hand, and lift hardly anything with her right hand alone. She stated that her pain medications made her dizzy, sleepy, and lightheaded.

After asking Ms. Madron about her capacities, the ALJ posed several questions to a vocational expert ("VE") who joined the hearing by telephone. The ALJ asked if a person who was limited to light exertional work and could only stand or walk for two hours in an eight hour workday was capable of working at any of Ms. Madron's previous jobs. The VE testified that, with those limitations, Ms. Madron would be able to work as a "cashier II." *Id.* at 45. The VE explained that even if the specific jobs Ms. Madron had held required more standing or

3

>walking than she was currently capable of, others in that job category would allow for such restrictions. The ALJ also asked whether there would be jobs available at the national or state level for an individual with the same restrictions he had previously described that did not require reading, taking into account Ms. Madron's age, education, and work experience. The VE replied that "there would be some real unskilled, light occupations that would fit within the hypothetical" and provided two examples: "an inspector hand packager" and "a small products assembler." *Id.* at 45-46. Ms. Madron's counsel inquired whether these two jobs could be performed by someone who needed to take five minute breaks every fifteen to twenty minutes, and the VE replied that neither job would permit this.

*Madron*, 311 Fed.Appx. 170, 172-74 (footnotes deleted). The ALJ issued a decision finding that Plaintiff was not disabled because she was capable of light exertional work with the sole additional physical limitations of standing or walking no more than two hours in an eight hour workday. The ALJ further limited Plaintiff's ability to a reading level of one. I affirmed the ALJ's decision.

The Tenth Circuit reversed and remanded the case to the Commissioner for an immediate award of benefits. As grounds, the Tenth Circuit first concluded that the ALJ had improperly evaluated Plaintiff's credibility with respect to her allegations of back pain. The ALJ found Plaintiff less than fully credible in this regard because of her daily activities, her failure to have an MRI performed, her continued use of tobacco despite claimed inability to pay for treatment, and because no physician had indicated she was incapable of working. The Tenth Circuit concluded that Plaintiff's daily activities were consistent with her alleged back pain and her statements regarding those activities had been consistent throughout the application process. The court also noted that the lack of an express statement by a physician that Plaintiff could not work did not mean that the medical

evidence was inconsistent with Plaintiff's alleged pain. Similarly, the Tenth Circuit concluded that Plaintiff's failure to obtain an MRI was because of cost and her alleged inability to pay was not undercut by her continued purchase of cigarettes, given that the MRI is significantly more expensive than the cigarettes. Finally, the Tenth Circuit discounted Plaintiff's alleged past false statements made in food assistance applications. In contrast, the Tenth Circuit concluded that the ALJ had properly evaluated Plaintiff's credibility with respect to her alleged respiratory complaints and had reasonably determined that Plaintiff's ankle injury was not disabling.

The other reason for the reversal was the Tenth Circuit's determination that the ALJ erred by finding that Plaintiff could do her former job as a cashier II or could work the two other specific jobs identified by the VE. All of these jobs, however, require a reading level of two, according to the Dictionary of Occupational Titles. Since the ALJ had previously determined Plaintiff had a reading level of one, and no explanation was offered for the apparent contradiction, remand was required.

Plaintiff now seeks attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 for fees incurred in appealing the case to this court and to the Tenth Circuit, as well as time spent on litigating the EAJA petition itself.

## Standard of Review

The EAJA provides that a court may award reasonable attorneys' fees "to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(b). A petition for such fees must be submitted within thirty days of final judgment and must show "that the party is a prevailing party and is eligible to receive an award under this

subsection, and the amount sought, including an itemized statement from any attorney or expert witness . . . stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B).  "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." *Id.*  The Commissioner has the burden of proof to show that his position was substantially justified.  *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995).  "The test for substantial justification in this circuit is one of reasonableness in law and fact." *Id.* Thus, the government's position must be "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The government's "position can be justified even though it is not correct."  *Id.* at 566 n. 2.  EAJA fees may be awarded where the ALJ's underlying action was unreasonable even if the government thereafter advanced a reasonable litigation position.  *Hackett v. Barnhart*, 475 F.3d 1166, 1174 (10th Cir. 2007).

Discussion

Plaintiff presents a timely petition under the EAJA asserting that she is the prevailing party and is eligible for fees under the EAJA.  She also alleges that the Commissioner's position in this case was not substantially justified.  The petition is supported by an itemized listing of hours and tasks from Plaintiff's attorney.

The Commissioner therefore has the burden of demonstrating that his position was substantially justified.  The Commissioner argues that his position was substantially justified

for several reasons. First, he notes that it was reasonable for the ALJ to conclude that Plaintiff could work as a cashier II despite her reading limitations because she had previously performed that exact work. I agree that, under the circumstances, the Commissioner's position in this regard was substantially justified. The Commissioner argues, and I agree, that there was additional evidence on the record to support the ALJ's determination that Plaintiff could perform other jobs existing in significant numbers in the economy because the vocational expert identified other jobs that required no reading ability.

In addition, the Commissioner argues that the Tenth Circuit upheld much of the ALJ's credibility determination but found error regarding Plaintiff's allegations of back pain. He notes, however, that the ALJ went through the proper steps in determining Plaintiff's credibility, recognized that Plaintiff had some pain and limitations but disagreed with the severity, and listed several reasons for finding Plaintiff less than fully credible. I agree. Although the Tenth Circuit disagreed, several of the bases for the credibility determination were reasonable, including that Plaintiff had apparently made false statements in her application for food assistance benefits, was able to engage in a range of daily activities, and had not always followed prescribed treatment. Viewing the record as a whole, I

conclude that the Commissioner was substantially justified in his litigation position.

Accordingly, it is ordered:

1. Plaintiff's Motion for Legal Fees Under 28 U.S.C.A. 2412 (Docket No. 41) is denied.

DATED at Denver, Colorado, on December 28, 2009.

BY THE COURT:


s/ Walker D. Miller
United States Senior District Judge